OFER M. GROSSMAN (CA Bar No.: 163150)
**LAW OFFICES OF OFER M. GROSSMAN**
P.O. Box 5576
Santa Monica, CA  90409
Phone: (310) 367-7504

and

BRENDAN J. FLAHERTY (MN Bar No.: 0327657)
(*pro hac vice* forthcoming)
**PRITZKER OLSEN, P.A.**
Plaza VII Building, Suite 2950
45 South Seventh Street
Minneapolis, MN 55402-1652
Phone: (612) 338-0202
Facsimile: (612) 338-0104
Email: brendan@pritzkerlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF CENTRAL CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| KATHERINE KELLY and JOHN PHELAN, | Case No.: |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| TOWNSEND FARMS, INC., an Oregon corporation, and PURELY POMEGRANATE, INC., a California corporation, UNITED JUICE CORP., a New Jersey corporation, and FALLON TRADING CO., INC., a Pennsylvania Corporation | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

COMES NOW Plaintiffs KATHERINE KELLY and JOHN PHELAN, individually, by and through their counsel of record, Law Offices of Ofer M. Grossman and Pritzker Olsen, P.A., and alleges and complains as follows:

## PARTIES

1.    Plaintiffs Katherine Kelly and John Phelan are married and residents of the State of Colorado.

2.    Defendant Townsend Farms, Inc. (hereafter "Townsend Farms") is a corporation organized under the laws of the State of Oregon with its corporate headquarters and principal place of business in Oregon.  Townsend Farms is, therefore, a corporate citizen of the State of Oregon.

3.    At all relevant times, Townsend Farms manufactured, produced, packaged, distributed, marketed, and sold frozen berry products, including the "Townsend Farms Organic Antioxidant Blend" (hereafter "Antioxidant Blend") that has been determined by the Centers for Disease Control (hereafter "CDC") to have caused 165 Hepatitis A illnesses in ten western states in 2013 (hereafter "the Outbreak").  Townsend Farms' Antioxidant Blend was sold at various retail locations in the United States, including locations in California.

4.    Defendant Purely Pomegranate, Inc. (hereafter "Purely Pomegranate") is a corporation organized under the laws of the State of California with its corporate headquarters and principal place of business in Dana Point, California.    Purely Pomegranate is, therefore, a corporate citizen of the State of California.

5.    At all relevant times, Purely Pomegranate sourced, imported, distributed, and sold pomegranate products, including pomegranate seeds (also called pomegranate "arils") to distributors, sellers, and food manufacturing businesses across the country, including Townsend Farms.

6.    Pomegranate seeds sourced, imported, manufactured, distributed, and sold by Purely Pomegranate were used in the Townsend Farms Organic Antioxidant Blend that was determined by the CDC to have caused the Outbreak.

7.    Defendant United Juice Corp. (hereafter "United Juice") is a corporation organized under the laws of the State of New Jersey with its corporate headquarters and

Complaint

principal place of business in New Jersey. United Juice is, therefore, a corporate citizen of the state of New Jersey.

8.      At all relevant times, United Juice sourced, imported, distributed, and sold pomegranate products, including pomegranate seeds, to distributors, sellers, and manufacturing businesses across the country, including Townsend Farms.

9.      Pomegranate seeds sourced, imported, manufactured, distributed, and sold by United Juice were used in the Townsend Farms Organic Antioxidant Blend that was determined by the CDC to have caused the Outbreak.

10.     Defendant Fallon Trading Co., Inc., (hereafter "Fallon Trading") is a corporation organized under the laws of the State of Pennsylvania with its corporate headquarters and principal place of business in Pennsylvania. Fallon Trading is, therefore, a corporate citizen of the State of Pennsylvania.

11.     At all relevant times, Fallon Trading sourced, imported, distributed, and sold pomegranate products, including pomegranate seeds, to distributors, sellers, and food manufacturing businesses across the country, including Townsend Farms.

12.     Pomegranate seeds sourced, imported, manufactured, distributed, and sold by Fallon Trading were used in the Townsend Farms Organic Antioxidant Blend that was determined by the CDC to have caused the Outbreak.

## JURISDICTION AND VENUE

13.     Subject matter jurisdiction in this matter is proper because the amount in controversy, exclusive of interest and costs, exceeds Seventy-five Thousand Dollars ($75,000.00), and the parties are citizens of different states, both as required by 28 U.S.C. § 1332(a).

14.     Defendants have engaged in substantial, continuous, and systematic contacts within the State of California, purposefully directing their activities toward California, including the placement of their goods into the stream of commerce with the intent and expectation they would be purchased by consumers in California, and this

Complaint

litigation arises out of those activities.

15.     Venue is proper in the United States District Court for the Central District of California, Southern Division,  pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim set forth in this action occurred in this judicial district and Defendant Purely Pomegranate is a corporate resident of this judicial district.

## FACTS

16.     Hepatitis A is a viral infection of the liver caused by the Hepatitis A virus (hereafter "HAV").  HAV is excreted in feces of infected people, and most infections are the result of eating foods contaminated with the feces of an infected person.  HAV generally remains in an infected person's feces for approximately two weeks before and two weeks after symptoms begin.  Hepatitis A infections begin with symptoms such as fever, anorexia, nausea, vomiting, diarrhea, fatigue, abdominal cramps, and abdominal tenderness.  Jaundice, dark-colored urine, or light-colored stools may be present at onset or may follow within a few days.

17.     The time period between exposure to HAV and the onset of symptoms varies from approximately ten to fifty days, depending on the number of infectious particles consumed.  Infection with very few particles results in longer incubation periods.  The period of communicability extends from early in the incubation period to about a week after the development of jaundice.  The greatest danger of spreading the disease to others occurs during the middle of the incubation period.

18.     Symptoms usually last a few weeks, but can last for several months.  Illnesses of two to six months are common.  Hepatitis A can cause serious complications, including liver failure and death.

19.     HAV is extremely stable under a wide range of environmental conditions, including freezing, heat, and desiccation.

20.     Contamination of foods by infected workers in food-processing plants is a

Complaint

common cause of HAV outbreaks.

21.     Fruits and fruit juices, cold cuts, milk and milk products, vegetables, salads, shellfish, and iced drinks are products commonly implicated in outbreaks of HAV.

22.     The Townsend Farms Organic Antioxidant Blend that was determined by the CDC to have caused the Outbreak consists of a blend of cherries, blueberries, pomegranate seeds, raspberries, and strawberries.

23.     According to the labeling, the contents of the product originated in the United States, Argentina, Chile, and Turkey.

24.     Townsend Farms touts itself as an expert in berry production and food safety.  For example, throughout the outbreak period its website contained the following representations:

**Pacific NW and around the world**
In addition to our beautiful acreage in the Columbia Gorge, Townsend Farms works with other family farms up and down the I-5 corridor, across the United States, and around the world.  **The Townsend family personally selects the farms we work with based on shared vision and goals, high standards of quality, a commitment to Good Agricultural Practices (G.A.P.) and sustainable farming methods.**

Our globally-situated source farms are utilized to provide the freshest produce available no matter the growing season in the Pacific NW, enabling us to provide the best product possible year-round**.  Under the Townsend Farms umbrella, you can expect the same quality as the produce from our original farm.**  We confidently provide each source farm on every package of berries, frozen or fresh, private label or our own.

…

**Food Safety**
G.A.P. - Good Agricultural Practices
At Townsend Farms our customers are an extension of our family and we take food safety very seriously.  Our farm as well as our **affiliate source farms all utilize Good Agricultural Practices (GAP) following stringent safety strategies to prevent and reduce the risk of microbial contamination.**

G.M.P. - Good Manufacturing Practices
All of our Townsend farm facilities are additionally subjected to   regular   third-party   inspection   following   the   Good

Manufacturing Practices (GMP) guidelines enforced by the FDA to ensure hygienic food processing procedures.

Produce Traceability
We know exactly where every berry originates, and we ensure our consumers can as well. We were early adopters of the Produce Traceability Initiative. Every package of our fruit, whether Private Label or Townsend Farms, fresh or frozen, contains a number that points to the farm on which it was grown. We do everything we can to prevent issues from the source. **But if a problem ever does arise, it can be traced and resolved immediately.**

(emphasis added)

25.     The defendants Purely Pomegranate, Fallon Trading, and United Juice variously and respectively imported, brokered, inspected, distributed or sold pomegranate seeds that Townsend Farms used to manufacture its Antioxidant Blend that was later found to be contaminated with HAV as described below.

26.     All of the defendants, therefore, at all relevant times were participants, for profit and other benefit, in the stream of commerce for the product that caused Plaintiff Katherine Kelly's injuries; were integral to the business enterprise such that the conduct of each defendant was a necessary factor in bringing the product to the initial consumer market; and each had control over, or a substantial ability to influence, the manufacturing or distribution process.

### 2013 Townsend Farms Hepatitis-A Outbreak

27.     In approximately May of 2013, the CDC detected a spike in individuals who contracted HAV. The CDC, along with state and local health departments, launched an epidemiological and microbiological investigation of sickened individuals.

28.     Laboratory studies of specimens from two people with HAV determined that the Outbreak strain of HAV was genotype 1B. This strain is rarely seen in the Americas, but circulates in the North Africa and Middle East regions.

29.     By questioning the individuals and families of those stricken by the rare strain of HAV, investigators identified frozen berries as the common source.

30.     Further investigation linked HAV infections with consumption of

6
Complaint

"Townsend Farms Organic Antioxidant Blend."

31.     The CDC and local and state health authorities urged consumers who had eaten Townsend Farms Organic Antioxidant Blend to either obtain a HAV vaccination or prophylactic dose of HAV immunoglobin to guard against the virus.

32.     By June 3, 2013, Costco Wholesale Co., Inc., began notifying its customers that they may have been exposed to HAV-contaminated packages of Townsend Farms Organic Antioxidant Blend.

33.     Like the CDC, Costco also urged customers who may have been exposed to HAV to be vaccinated.

34.     On June 4, 2013, Townsend Farms issued a "voluntary" recall of certain lots of that product because of potential contamination with Hepatitis A.

35.     The CDC and other state and regional public health agencies advised any purchasers of the Defendants' Townsend Farms Organic Antioxidant Blend to stop consuming the product and obtain an HAV vaccination or a prophylactic dose of immunoglobulin.  Public health officials have also recommended that people exposed to an individual known to have become ill in the HAV Outbreak, or who were exposed to the implicated product, to also obtain an HAV vaccination, or a prophylactic dose of immunoglobulin.

36.     As of September 15, 2014, the CDC has confirmed that 165 people contracted Hepatitis A from Townsend Farms Organic Antioxidant Blend.

37.     Following the recall of Townsend Farms Organic Antioxidant Blend, the Outbreak stopped.

38.     By combining information from the Food and Drug Administration's (hereafter "FDA") investigation and the CDC's investigation, the FDA and CDC determined that the source of the Outbreak was pomegranate seeds contaminated with HAV that were imported, distributed, and sold by Purely Pomegranate, Fallon Trading, and United Juice.

**Katherine Kelly's Illness**

39. In April 2013, Plaintiffs purchased Townsend Farms Organic Antioxidant Blend at the "Costco" retail store located at 170 Cooley Mesa Road, Gypsum, Colorado 81637.

40. The product purchased by Plaintiffs lacked any warning about potential foodborne illness and implied that the product was safe and wholesome.

41. The Townsend Farms Antioxidant Blend purchased by Plaintiffs was manufactured with HAV-laden pomegranate seeds from Purely Pomegranate, Fallon Trading, and United Juice.

42. The frozen fruit within the bag was therefore potentially contaminated with HAV which originated from pomegranate seeds from Purely Pomegranate, Fallon Trading, and United Juice.

43. All of the fruit within the bag was either contaminated with HAV or manufactured in insanitary conditions where it was exposed to HAV-contaminated pomegranate seeds.

44. Plaintiff Kelly consumed the berry product in the weeks following her purchase of it.

45. In early June, Plaintiff Kelly was notified that the Organic Antioxidant Blend she had recently consumed was linked to Hepatitis A infections.

46. The notification specifically advised her to seek medical treatment and an HAV vaccination.

47. She followed the instructions and received a vaccination.

48. Soon after receiving the vaccination, Plaintiff Kelly began experiencing fatigue, loss of appetite, stomach pain, and headache.

49. These symptoms soon developed to include vomiting, nausea, fever, muscle and joint aches and pain, jaundice, dark urine, elevated bilirubin levels, trouble breathing, dizziness, diarrhea, hemolysis, and hemolytic anemia.

50.     As the symptoms developed, Plaintiff Kelly sought medical treatment which included extensive blood work, ultrasounds, and other diagnostic procedures. She was eventually diagnosed with hemolytic anemia and persistent hemolysis.  Her treatment is ongoing.

51.     Plaintiff Kelly contracted HAV directly from the consumption of HAV-contaminated Antioxidant Blend product and suffered the symptoms and damages set forth above.

52.     In the alternative, the consumption of the potentially-contaminated Antioxidant Blend necessitated a vaccination which in turn caused the symptoms and damages set forth above.

53.     As a direct and proximate result of consuming Townsend Farms' Antioxidant Blend produced with contaminated or potentially-contaminated pomegranate seeds from Purely Pomegranate, Fallon Trading, and United Juice, Plaintiff Katherine Kelly has sustained significant damages, including past and future pain, suffering, mental anguish, and emotional distress; past and future expenses for medical treatment, hospital stays, medication, and rehabilitation; a loss of wages; and other harms, losses, and damages as alleged herein and to be proven at trial.

## FIRST CLAIM FOR RELIEF

### Strict Product Liability – Manufacturing Defect

### Townsend Farms

54.     Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

55.     Defendant Townsend Farms manufactured, packaged, tested, inspected, labeled, advertised, promoted, marketed, supplied, distributed, and/or sold Townsend Farms Organic Antioxidant Blend.

56.     Defendant Townsend Farms knew that the berry product was to be purchased and consumed without inspection or testing for pathogens by the general

public, including Plaintiff Kelly.

57.     The Antioxidant Blend manufactured by Townsend Farms and consumed by Plaintiff Kelly was unreasonably dangerous when used for its intended use of human consumption because the product was manufactured with HAV-contaminated pomegranate seeds and was therefore either contaminated with HAV or potentially contaminated with HAV.

58.     Plaintiff Kelly consumed the adulterated Antioxidant Blend without substantial change in its condition as manufactured, distributed, and sold.

59.     Because HAV is not visible to the naked eye, is odorless, and is not otherwise detectible to an ordinary consumer, Plaintiff Kelly was not aware of and could not reasonably have discovered the dangerous condition of the defective Antioxidant Blend.

60.     As a direct and proximate result of Defendant's manufacture, testing, inspection, distribution, and sale of its defective Antioxidant Blend, Plaintiff Kelly received an HAV vaccine.

61.     Whether from an HAV infection caused by consumption of contaminated product or as a result of the HAV vaccine, Plaintiff Kelly sustained the injuries and damages set forth herein.

62.     Defendant Townsend Farms is, therefore, strictly liable to Plaintiffs for the harm proximately caused by its product, and Plaintiffs are entitled to damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Strict Product Liability – Manufacturing Defect

### Purely Pomegranate

63.     Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

64.     Defendant Purely Pomegranate sourced, imported, manufactured, packaged, tested, inspected, labeled, advertised, promoted, marketed, supplied, distributed, and/or sold pomegranate seeds for use in Townsend Farms Organic Antioxidant Blend.

65.     Defendant Purely Pomegranate knew that its pomegranate seeds were to be consumed without inspection or testing for pathogens by Plaintiff Kelly and the general public.

66.     The Townsend Farms Organic Antioxidant Blend containing contaminated or potentially-contaminated Purely Pomegranate pomegranate seeds consumed by Plaintiff Kelly was unreasonably dangerous when used for its intended use of human consumption because the product was manufactured with HAV-contaminated pomegranate seeds and was therefore either contaminated with HAV or potentially contaminated with HAV.

67.     Plaintiff Kelly consumed the berry product without substantial change in its condition as manufactured, distributed, and sold.

68.     Because HAV is not visible to the naked eye, is odorless, and is not otherwise detectible to an ordinary consumer, Plaintiff Kelly was not aware of and could not reasonably have discovered the dangerous condition of the defective Antioxidant Blend.

69.     As a direct and proximate result of Defendant Purely Pomegranate's production of defective pomegranate seeds, Plaintiff Kelly received a HAV vaccine.

70.     Whether from an HAV infection caused by consumption of contaminated product or as a result of the HAV vaccine, Plaintiff Kelly sustained the injuries and damages set forth herein.

71.     Defendant Purely Pomegranate, therefore, is strictly liable to Plaintiffs for the harm proximately caused by its contaminated berry product, and Plaintiffs are entitled to damages in an amount to be proven at trial.

## **THIRD CLAIM FOR RELIEF**

### **Strict Product Liability – Manufacturing Defect**

### **United Juice**

72.     Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

73.     Defendant United Juice sourced, imported, manufactured, packaged, tested, inspected, labeled, advertised, promoted, marketed, supplied, distributed, and/or sold pomegranate seeds used in Townsend Farms Organic Antioxidant Blend.

74.     Defendant United Juice knew that its pomegranate seeds were to be consumed without inspection or testing for pathogens by Plaintiff Kelly and the general public.

75.     The Townsend Farms Organic Antioxidant Blend containing contaminated United Juice pomegranate seeds consumed by Plaintiff Kelly was unreasonably dangerous when used for its intended use of human consumption because the product was manufactured with HAV-contaminated pomegranate seeds and was therefore either contaminated with HAV or potentially contaminated with HAV.

76.     Plaintiff Kelly consumed the adulterated berry product without substantial change in its condition as manufactured, distributed, and sold.

77.     Because HAV is not visible to the naked eye, is odorless, and is not otherwise detectible to an ordinary consumer, Plaintiff Kelly was not aware of and could not reasonably have discovered the dangerous condition of the defective Antioxidant Blend.

78.     As a direct and proximate result of Defendant United Juice's production of defective pomegranate seeds, Plaintiff Katherine Kelly received a HAV vaccine.

79.     Whether from an HAV infection caused by consumption of contaminated product or as a result of the HAV vaccine, Plaintiff Kelly sustained the injuries and damages set forth herein.

80.     Defendant United Juice, therefore, is strictly liable to Plaintiffs for the harm proximately caused by its contaminated berry product, and Plaintiffs are entitled to damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Strict Product Liability – Manufacturing Defect

### Fallon Trading

81.     Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

82.     Defendant Fallon Trading sourced, imported, manufactured, packaged, tested, inspected, labeled, advertised, promoted, marketed, supplied, distributed, and/or sold pomegranate seeds used in Townsend Farms Organic Antioxidant Blend.

83.     Defendant Fallon Trading knew that its pomegranate seeds were to be consumed without inspection or testing for pathogens by Plaintiff Kelly and the general public.

84.     The Townsend Farms Organic Antioxidant Blend containing contaminated Fallon Trading pomegranate seeds consumed by Plaintiff Kelly was unreasonably dangerous when used for its intended use of human consumption because the product was manufactured with HAV-contaminated pomegranate seeds and was therefore either contaminated with HAV or potentially contaminated with HAV.

85.     Plaintiff Kelly consumed the adulterated berry product without substantial change in its condition as manufactured, distributed, and sold.

86.     Because HAV is not visible to the naked eye, is odorless, and is not otherwise detectible to an ordinary consumer, Plaintiff Kelly was not aware of and could not reasonably have discovered the dangerous condition of the defective Antioxidant Blend.

87.     As a direct and proximate result of Defendant Fallon Trading's production of defective pomegranate seeds, Plaintiff Kelly received a HAV vaccine.

Complaint

88.     Whether from an HAV infection caused by consumption of contaminated product or as a result of the HAV vaccine, Plaintiff Kelly sustained the injuries and damages set forth herein.

89.     Defendant Fallon Trading, therefore, is strictly liable to Plaintiffs for the harm proximately caused by its contaminated berry product, and Plaintiffs are entitled to damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Negligence

### Townsend Farms

90.     Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

91.     Defendant Townsend Farms owed Plaintiffs a duty to exercise reasonable care in the manufacture, inspection, testing, marketing, supplying, distributing, and selling of its berry product for human consumption.

92.     Defendant Townsend Farms failed to exercise ordinary and reasonable care and breached its duty to Plaintiffs by, among other acts and omissions:

a. Failing to adequately source, screen, inspect, and verify its suppliers' production and food safety practices, particularly those of its foreign suppliers of pomegranate seeds;

b. Failing to assure that its suppliers of pomegranate seeds used products produced in conformity with the rules and regulations applicable to domestic producers;

c. Failing to require its suppliers to implement adequate testing protocols;

d. Failing to adequately test its products for HAV and other adulterants;

e. Failing to put adequate warnings on its product and affirmatively representing that its products contained fruit from carefully selected farmers;

Complaint

f.  Failing to warn that its product may contain adulterants that are dangerous to the consumer's health;

g.  Failing to train and supervise employees and agents to prevent HAV contamination of the berry product;

h.  Failing to promptly notify consumers of the potential contamination;

i.  Failing to promptly initiate a recall; and

j.  Other acts of negligence as will be identified during the course of discovery.

93.    As a direct and proximate result of Defendant Townsend Farms' negligent acts and omissions, Plaintiff Kelly received an HAV vaccine.

94.    Whether from an HAV infection caused by consumption of contaminated product or as a result of the HAV vaccine, Plaintiff Kelly sustained the injuries and damages set forth herein.

95.    Defendant Townsend Farms is, therefore, liable to Plaintiff Kelly  for the harm proximately caused by its negligence, and Plaintiff is entitled to damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Negligence

### Purely Pomegranate

96.    Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

97.    Defendant Purely Pomegranate owed Plaintiffs a duty to exercise reasonable care in the sourcing, importing, manufacturing, inspection, testing, marketing, supplying, distributing, and selling of its pomegranate seeds for human consumption.

98.    Defendant Purely Pomegranate failed to exercise ordinary and reasonable care and breached its duty to Plaintiffs by, among other acts and omissions:

Complaint

a. Failing to adequately screen, inspect, and verify its suppliers' production and food safety practices, particularly those of its foreign suppliers of pomegranate seeds;

b. Failing to assure that its Turkish supplier of pomegranate seeds produced its products in conformity with the rules and regulations applicable to domestic producers;

c. Failing to require its suppliers to implement adequate food safety protocols;

d. Failing to adequately test its products for HAV and other adulterants;

e. Failing to put adequate warnings on its product;

f. Failing to warn that its product may contain adulterants that are dangerous to the consumer's health;

g. Failing to train and supervise employees and agents to prevent HAV contamination of the pomegranate product;

h. Failing to promptly notify consumers of the potential contamination;

i. Failing to promptly initiate a recall; and

j. Other acts of negligence as will be identified during the course of discovery.

99.    As a direct and proximate result of Defendant Purely Pomegranate's negligent acts and omissions, Plaintiff Kelly received an HAV vaccine.

100.    Whether from an HAV infection caused by consumption of contaminated product or as a result of the HAV vaccine, Plaintiff Kelly sustained the injuries and damages set forth herein.

101.    Defendant Purely Pomegranate is, therefore, liable to Plaintiff Kelly for the harm proximately caused by its negligence, and Plaintiff is entitled to damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Negligence

### United Juice

102.    Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

103.    Defendant United Juice owed Plaintiffs a duty to exercise reasonable care in the sourcing, importing, manufacturing, inspection, testing, marketing, supplying, distributing, and selling of its pomegranate seeds for human consumption.

104.    Defendant United Juice failed to exercise ordinary and reasonable care and breached its duty to Plaintiffs by, among other acts and omissions:

a. Failing to adequately screen, inspect, and verify its suppliers' production and food safety practices, particularly those of its foreign suppliers of pomegranate seeds;

b. Failing to assure that its Turkish supplier of pomegranate seeds produced its products in conformity with the rules and regulations applicable to domestic producers;

c. Failing to require its suppliers to implement adequate food safety protocols;

d. Failing to adequately test its products for HAV and other adulterants;

e. Failing to put adequate warnings on its product;

f. Failing to warn that its product may contain adulterants that are dangerous to the consumer's health;

g. Failing to train and supervise employees and agents to prevent HAV contamination of the pomegranate product;

h. Failing to promptly notify consumers of the potential contamination;

i. Failing to promptly initiate a recall; and

j. Other acts of negligence as will be identified during the course of

discovery.

105.   As a direct and proximate result of Defendant United Juice's negligent acts and omissions, Plaintiff Katherine Kelly received an HAV vaccine.

106.   Whether from an HAV infection caused by consumption of contaminated product or as a result of the HAV vaccine, Plaintiff Kelly sustained the injuries and damages set forth herein.

107.   Defendant United Juice is, therefore, liable to Plaintiff Kelly for the harm proximately caused by its negligence, and Plaintiff is entitled to damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### Negligence

### Fallon Trading

108.   Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

109.   Defendant Fallon Trading owed Plaintiffs a duty to exercise reasonable care in the sourcing, importing, manufacturing, inspection, testing, marketing, supplying, distributing, and selling of its pomegranate seeds for human consumption.

110.   Defendant Fallon Trading failed to exercise ordinary and reasonable care and breached its duty to Plaintiffs by, among other acts and omissions:

    a. Failing to adequately screen, inspect, and verify its suppliers' production and food safety practices, particularly those of its foreign suppliers of pomegranate seeds;

    b. Failing to assure that its Turkish supplier of pomegranate seeds produced its products in conformity with the rules and regulations applicable to domestic producers;

    c. Failing to require its suppliers to implement adequate food safety protocols;

18

Complaint

d.  Failing to adequately test its products for HAV and other adulterants;

e.  Failing to put adequate warnings on its product;

f.  Failing to warn that its product may contain adulterants that are dangerous to the consumer's health;

g.  Failing to train and supervise employees and agents to prevent HAV contamination of the pomegranate product;

h.  Failing to promptly notify consumers of the potential contamination;

i.  Failing to promptly initiate a recall; and

j.  Other acts of negligence as will be identified during the course of discovery.

111.  As a direct and proximate result of Defendant Fallon Trading's negligent acts and omissions, Plaintiff Kelly received an HAV vaccine.

112.  Whether from an HAV infection caused by consumption of contaminated product or as a result of the HAV vaccine, Plaintiff Kelly sustained the injuries and damages set forth herein.

113.  Defendant Fallon Trading is, therefore, liable to Plaintiff Kelly for the harm proximately caused by its negligence, and Plaintiff is entitled to damages in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### Negligence Per Se

### Townsend Farms

114.  Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

115.  Defendant Townsend Farms had a duty to comply with all state, local, and federal statutory and regulatory provisions that pertained and applied to the manufacture, distribution, storage, and sale of its food products.

116.  Plaintiffs are in a class of individuals for which federal and state food

safety laws are designed to protect.

117.   The Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 331(a) and analogous state provisions make it unlawful to manufacture, sell or distribute food that is adulterated with dangerous organisms, such as HAV.

118.   Defendant Townsend Farms manufactured, sold, and distributed a frozen berry product that was adulterated with HAV and, therefore, breached the duty to comply with these laws.  Accordingly, Defendant Townsend Farms was negligent *per se*.

119.   As a direct and proximate cause of Defendant Townsend Farms' violation of food safety laws as described above, Plaintiffs suffered the injuries and damages described herein.

## TENTH CLAIM FOR RELIEF

### Negligence Per Se

### Purely Pomegranate

120.   Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

121.   Defendant Purely Pomegranate had a duty to comply with all state, local, and federal statutory and regulatory provisions that pertained and applied to the manufacture, distribution, storage, and sale of its food products.

122.   Plaintiffs are in a class of individuals for which federal and state food safety laws are designed to protect.

123.   The Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 331(a) and analogous state provisions make it unlawful to manufacture, sell or distribute food that is adulterated with dangerous organisms, such as HAV.

124.   Defendant Purely Pomegranate, manufactured, sold, and distributed pomegranate seed product that was adulterated with HAV and, therefore, breached the duty to comply with these laws.  Accordingly, Defendant Purely Pomegranate was

negligent *per se.*

125.   As a direct and proximate cause of Defendant Purely Pomegranate's violation of food safety laws as described above, Plaintiff Katherine Kelly suffered the injuries and damages described herein.

### ELEVENTH CLAIM FOR RELIEF

### Negligence Per Se

### United Juice

126.   Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

127.   Defendant United Juice had a duty to comply with all state, local, and federal statutory and regulatory provisions that pertained and applied to the manufacture, distribution, storage, and sale of its food products.

128.   Plaintiffs are in a class of individuals for which federal and state food safety laws are designed to protect.

129.   The Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 331(a) and analogous state provisions make it unlawful to manufacture, sell or distribute food that is adulterated with dangerous organisms, such as HAV.

130.   Defendant United Juice manufactured, sold, and distributed pomegranate seed product that was adulterated with HAV and, therefore, breached the duty to comply with these laws.  Accordingly, Defendant United Juice was negligent *per se.*

131.   As a direct and proximate cause of Defendant United Juice's violation of food safety laws as described above, Plaintiff Katherine Kelly suffered the injuries and damages described herein.

### TWELFTH CLAIM FOR RELIEF

### Negligence Per Se

### Fallon Trading

132.   Plaintiffs incorporate the preceding paragraphs by this reference as if each

paragraph was set forth herein in its entirety.

133.   Defendant Fallon Trading had a duty to comply with all state, local, and federal statutory and regulatory provisions that pertained and applied to the manufacture, distribution, storage, and sale of its food products.

134.   Plaintiffs are in a class of individuals for which federal and state food safety laws are designed to protect.

135.   The Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 331(a) and analogous state provisions make it unlawful to manufacture, sell or distribute food that is adulterated with dangerous organisms, such as HAV.

136.   Defendant Fallon Trading manufactured, sold, and distributed pomegranate seed product that was adulterated with HAV and, therefore, breached the duty to comply with these laws.  Accordingly, Defendant Fallon Trading was negligent *per se.*

137.   As a direct and proximate cause of Defendant Fallon Trading's violation of food safety laws as described above, Plaintiff Katherine Kelly suffered the injuries and damages described herein.

## THIRTEENTH CLAIM FOR RELIEF

### Loss of Consortium

### All Defendants

138.   Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph was set forth herein in its entirety.

139.   Plaintiff John Phelan is the husband of Plaintiff Katherine Kelly.

140.   As a direct and proximate result of the Defendants' conduct and resulting injuries to Katherine Kelly, Plaintiff John Phelan has been damaged through a loss of consortium and other services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment against each defendant as follows:

22

1)   That the Court award Plaintiffs judgment against Defendants in such sums as shall be determined to fully and fairly compensate Plaintiffs for all general, special, incidental, and consequential damages incurred, or to be incurred, by Plaintiffs as the direct and proximate result of the Defendants' defective product and their acts and omissions.  These include, but are not limited to: physical pain and suffering, both past and future; medical and medical-related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; wage loss, both past and future; and other ordinary, incidental, and consequential damages as would be anticipated to arise under the circumstances;

2)   That the Court award Plaintiffs their costs incurred in prosecuting this action;

3)   That the Court award Plaintiffs the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

4)   That the Court award such other and further relief as it deems necessary and proper in the circumstances.

Dated this 28th day of May, 2015

LAW OFFICES OF OFER M GROSSMAN

By: _____
Ofer M. Grossman (CA Bar No.: 163150)
PO Box 5576
Santa Monica, CA 90409
Phone:  310.367.7504
Email:  omglaw@gmail.com

and

Complaint

PRITZKER OLSEN, P.A.
Brendan J. Flaherty
(*pro hac vice* forthcoming)
45 South 7th Street, Suite 2950
Minneapolis, MN 55402
Phone:  612.338.0202
        Facsimile: (612) 338-0104
Email:  brendan@pritzkerlaw.com

**PLAINTIFF HEREBY DEMANDS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 28th day of May, 2015.

LAW OFFICES OF OFER M GROSSMAN

By: _____
Ofer M. Grossman
PO Box 5576
Santa Monica, CA 90409
Phone:  310.367.7504

and

PRITZKER OLSEN, P.A.
Brendan J. Flaherty
(*pro hac vice* forthcoming)
45 South 7th Street, Suite 2950
Minneapolis, MN 55402
Phone:  612.338.0202
        Facsimile: (612) 338-0104
Email:  brendan@pritzkerlaw.com

24

Complaint